UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
UNITED STATES OF AMERICA,

           v.                                       13 CR 261 (PKC)

LORENZO RIVERAS - QUEZADAS,

               Defendant.

------------------------------------------------------X

**DEFENDANT LORENZO RIVERAS-QUEZADA'S SENTENCING MEMORANDUM**

                                                Richard H. Rosenberg, Esq.
                                                Attorney for Gary Sanchez
                                                217 Broadway----Suite 707
                                                New York, New York   10007
                                                (212) 586-3838

*Introduction*

Defendant Lorenzo Riveras-Quezada is scheduled to be sentenced on April 29, 2014 following his guilty plea under Count One of the indictment to a violation of 21 U.S.C. § 841 (b)(1) (A). The defendant was first arrested on these charges on May 15, 2013 and has been incarcerated since that date.

The defendant had a successful safety valve proffer with the government in which he truthfully and completely discussed his role in the offense. Accordingly, subject to the court's approva, the plea agreement provides for application of the safety valve pursuant to U.S.S. G. § 5C1.2 and 18 U.S. C. § 3553 (f). In addition, Probation Department's Pre-Sentence Report recommends application of the "safety valve" and has included it in their guideline calculation. (PSR ¶ 64 ).

*Comments and Objections to the Pre-Sentence Report*

There are no objections to the Pre-Sentence Report.

*The Guideline Sentence Range*

Both the plea agreement and the PSR arrive at the same advisory guideline range. With application of the safety-valve the mandatory minimum sentence otherwise called for by the statute does not apply. Accordingly, the advisory guideline range for Mr. Riveras, a defendant with zero criminal history points, is 70-87 months imprisonment.

As this court is well aware, while the sentencing guidelines provide a sentencing court with a "starting point and the initial benchmark", *Gall v. United States*, 128 S. Ct. 586 (2007), a sentencing court must now consider all of the 18 U.S.C. § 3553 (a) factors, not just the guidelines, in determining a sentence that is minimally sufficient to meet the goals of sentencing

2

set forth in 18 U.S.C. § 3553 (a) (2): justice, deterrence, incapacitation and rehabilitation. United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005).

The requirement that a court impose a "sufficient, but not greater than necessary" sentence to achieve those goals sets a limit on the sentence that a court may impose. Further, in determining whether and to what extent imprisonment is appropriate based on § 3553 (a) factors, the court is required to "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582 (a).

In *Pepper v. United States*, 131 S. Ct. 1229 (2011), the Court *twice* emphasized that a sentencing judge assumes "an overarching duty under § 3553(a) to 'impose a sentence sufficient, but not greater than necessary' to comply with the sentencing purposes set forth in § 3553(a)(2)." *Id.*, at 1242, 1243. See also *United States v. Dorvee*, 616 F.3d 174, 182-83 (2d Cir. 2010) ("[u]nder §3553(a)'s 'parsimony clause,' it is the sentencing court's duty to 'impose a sentence sufficient, but not greater than necessary to comply with the specific purposes set forth' at 18 U.S.C. §3553(a)(2)"), *quoting United States v. Samas*, 561 F.3d 108, 110 (2d Cir. 2009).

As the Second Circuit explained in *Dorvee*,

> [e]ven where a district court has properly calculated the Guidelines, it may not presume that a Guidelines sentence is reasonable for any particular defendant, and accordingly, must conduct its own independent review of the §3553(a) sentencing factors. *See* [*United States v.*] *Cavera*, 550 F.3d [180,]189 [(2d Cir. 2008) (*en banc*)].

616 F.3d at 182.

For the reasons that follow in this memorandum and for the 18 U.S.C.§ 3553 (a) factors present in this case we respectfully submit that a sentence below the advisory guideline range is

3

appropriate in this case to ensure a sentence that is minimally necessary to achieve the goals of sentencing and the interests of justice.

***The Defendant's Background, Character and Circumstances of the Offense***

Under 18 U.S.C.§ 3661, "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

Lorenzo Riveras- Quezada is a 30 year old young man whose past and praise from many quarters belie his involvement in this offense. As the letters submitted with this submission attest, he is a man who has earned the respect, trust and affection from people who have known him his whole life and from people he has met within the past two years after he emigrated from his native Dominican Republic to New York.

As the PSR relates, Lorenzo Riveras has not had an easy life. He was born into poverty in the Dominican Republic, one of eight siblings. His biological parents, a farmer (now retired ) and his wife, a homemaker, were too poor to raise another child. Therefore, at the age of one he was sent off to live with his maternal aunt and her husband, rice farmers, who raised him as their own. In rural Dominican Republic school was a luxury. At the age of 12 Lorenzo left school and worked full time on his adoptive parents' farm. With money that he earned Lorenzo helped his financially strapped biological parents with whom he kept regularly in touch.

In 2003 at the age of 20 Lorenzo's long term, home town girlfriend emigrated to the Unit3d States. When she returned later that year to the Dominican Republic they married. His wife, Heidy Baldera became a permanent legal resident and took up residency in New York but traveled often to the Dominican Republic where the defendant remained. In 2006 their son Brian

was born. In 2010, the strains and difficulties of a long-distance relationship manifested itself and, according to the defendant, Heidy found another man in her life.

In November 2011 the defendant, with sponsorship by Heidy, gained his permanent residency and arrived in New York with the intention of residing with Heidy and their son. That did not work out. Over the two years the defendant scrapped by with jobs as a dishwasher, groundskeeper, and for approximately 8 months leading to his arrest, he worked at a florist shop and also delivered supermarket fliers.

Eventually Mr Riveras found a room to rent in an apartment on Jerome Avenue in the Bronx occupied by Altagracia Hernandez.and her daughters. They became romantically involved and remain so. The flower shop where he worked was owned by Altagracia's sister. From his meager earnings Lorenzo continued to financially aid his parents back home and cared, as best he could, for his son Brian. As noted in the PSR the defendant would mind for his son Brian several days a week, enabling Heidy to work at her McDonald's job.

In the late fall of 2012 a neighbor from the same apartment building, with whom the defendant had a passing acquaintance, ,made Mr. Riveras an offer that heo, unfortunately and regrettably, accepted. That neighbor, and another individual from the same building, were involved in the business of heroin distribution and were leading participants in the charged conspiracy. The defendant was told that if he found customers they would pay him approximately $100.00 for each transaction. Over the following months the defendant was able to find approximately four repeat customers. While it by no means made him rich, the cash money earned from these errands and hustle compared favorably to the minimum wages earned by dishwashing, weeding and delivering flowers.

5

The ready availability of "easy money" coupled with parental and familiar responsibilities tipped the defendant's moral balance. However, this descent into criminal behavior comes as a shock and antithetical to what people have seen in him over the years.

His biological and adoptive parents and siblings all write of the defendant's good and caring nature, his concerns for others and his community. ( Exhibits B-E ) The former mayor of his hometown has submitted a letter that attests to the defendant's characteristics as a humble, peaceful, law abiding and hard working individual.(Exhibit F ). Similarly, the president of the hometown Neighborhood Board has written of the defendant's reputation for honesty, hard work and reliability.( Exhibit G ). These qualities and more are repeated throughout the many letters from hometown friends who have known the defendant since childhood. ( Exhibits M-Y )

From his new circle of friends and "family" here in New York, we learn that Mr. Riveras' decency, caring and core goodness positively affected the lives of those who have come to love and adore him. His current girl friend, Altagracia Hernandez, speaks of Mr Riveras' selfless attention to Ms. Hernandez' daughters and others. ( Exhibit H ) Her daughters have also submitted letters. ( Exhibits J, K, L ) They refer to themselves as step-daughters, reflecting their admiration, love and respect. Andrea Ruiz, Altagracia's sister and the owner of the flower shop where he worked, has written of the defendant's excellent work ethic and caring, devoted nature. ( Exhibit I )

The defendant's letter,(Exhibit A) expresses the sincere remorse of a man committed to a future of dedication to family and living a law abiding life

6

***The need for the sentence imposed to achieve the goals and objective of 18 U.S.C. §3553 (a):***

The statute directs the court, in determining sentence, to consider the need for the sentence to promote respect for the law, provide just punishment, afford adequate deterrence to further criminal conduct and to protect the public from further crimes of the defendant. These purposes all would be satisfied in this case by a sentence below the advisory guideline range..

Generally speaking, "[d]eterrence, incapacitation and rehabilitation are prospective and societal - each looks forward and asks: What amount and kind of punishment will help make society safe. In contrast, retribution imposes punishment based upon moral culpability and asks: What penalty is needed to restore the offender to moral standing within the community?" *United States v. Cole*, 662 F. Supp. 2d 632, 637, (N.D. Ohio 2008).

It is respectfully urged that in determining a sentence that is both reasonable and minimally sufficient to achieve the goals of sentencing that the court consider the aforementioned background and character of the defendant as a basis for imposing a sentence below the advisory guideline minimum sentence. Should the court adopt the safety valve the defendant's advisory guideline range would be 70 to 87 months[1] which appears yet to be more than minimally necessary to address the defendant's role in the offense and his otherwise unblemished history. This was a participant who earned relatively little from his efforts in the short time that he engaged in the offense. His background and lack of criminal history suggests strongly that Mr. Riveras will not pose a future threat to society and is an excellent candidate for rehabilitation.

---

[1] A new amendment to the Guidelines, scheduled to be effective November 1, 2014, would reduce the offense level by two, resulting in a 57- 71 month advisory range.

*Conclusion*

For all of the foregoing reasons, we respectfully submit that the court should impose a sentence substantially lower than the advisory guideline range/

Dated : New York, New York
April 16, 2014

Respectfully submitted,

Richard H. Rosenberg

To: All parties (ECF)